UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CRIMINAL ACTION NO. 7:19-CR-00005-KKC-EBA-1

(Related Civil Action No. 7:22-CV-00102-KKC-EBA)

UNITED STATES OF AMERICA,                                                    PLAINTIFF,

V.                          **REPORT AND RECOMMENDATION**

RICHARD L. STARGHILL, II,                                                    DEFENDANT.

*** *** *** ***

Richard L. Starghill, II, a federal prisoner, brings this action under 28 U.S.C. § 2255, seeking to vacate, set aside, or correct his conviction and sentence. [R. 150]. The Court recognizes that Starghill is proceeding *pro se* and construes his petition more leniently. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United States*, 540 U.S. 375, 381–83 (2003). For the reasons explained below, the undersigned will recommend Starghill's § 2255 petition be denied.

## I. FACTS AND PROCEDURAL HISTORY

The underlying facts of this case and much of its procedural history have been previously outlined by the Sixth Circuit Court of Appeals:

> The events in question took place in Pike County, Kentucky in February 2019. Ronnie Joe Mullins, a friend of Starghill, had invited Starghill to Mullins's residence. The following day, other individuals in the residence began arguing and damaging the property, causing Mullins to call the police. When the police arrived, Kentucky State Trooper Steven Hamilton found Starghill in a bedroom with a handgun "cradled in the bend of his arm." Trooper Hamilton also observed a sawed-off shotgun "laying underneath [Starghill's] left shoulder."
>
> A federal grand jury indicted Starghill on one count of possessing two firearms as a convicted felon, in violation of 18 U.S.C. § 922(g), and on one count of possessing a sawed-off shotgun (one of the two firearms) that was not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d). Starghill's

jury trial began in November 2019, but ended in a mistrial, on Starghill's motion, after the jury deadlocked and a juror was found to have contacted an outside party regarding the case. A second trial also ended in a mistrial, again on Starghill's motion, after a venireman searched the internet for Starghill and publicized the results to other jurors.

In February 2020, Starghill was brought before the court for a third trial. After three hours of deliberations, the jury returned a verdict of guilty on both counts. The district court subsequently sentenced Starghill to a total of 240 months of imprisonment, which was 22 months below the advisory Guidelines range.

*United States v. Starghill*, No. 20-5706, 2021 WL 3140316, at *1 (6th Cir. July 26, 2021). After his sentencing, Starghill appealed his conviction on several grounds, but the Sixth Circuit Court of Appeals ultimately affirmed the district court's judgment. *Id.* at *3.

On October 21, 2022, Starghill filed his § 2255 petition to assert several claims of ineffective assistance of counsel and to vacate his conviction. [R. 150]. In addition, he also asserts claims of prosecutorial misconduct, judicial misconduct, and evidence insufficiency to challenge his conviction. [*Id.* at pgs. 13–16]. The United States responded on February 24, 2023. [R. 161]. The undersigned received Starghill's reply on July 27, 2023. [R. 169]. Therefore, the petition is ripe for review.

## II. LEGAL STANDARD

A motion brought pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction. A prisoner has a statutory right to collaterally attack his conviction or sentence. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). For a federal prisoner to prevail on such a claim, he bears the burden of showing that: (1) his conviction resulted from an error of constitutional magnitude; (2) his sentence was imposed outside the statutory limits; or (3) an error of fact or law occurred that was so fundamental as to render the entire proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003), *cert. denied*, 540 U.S. 1133 (2003). If the prisoner alleges constitutional error, he must establish by a preponderance of the evidence that the error "had a substantial and injurious effect or influence on the proceedings." *Watson*, 165 F.3d at 488

(citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). Alternatively, if he alleges a non-constitutional error, he must establish "a fundamental defect which inherently results in a complete miscarriage of justice . . . an error so egregious that it amounts to a violation of due process." *Id.* at 488 (citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)).

### III. ANALYSIS

*Ineffective Assistance of Counsel Claims*

#### A

To successfully assert an ineffective assistance of counsel claim, Starghill must show two essential elements for each claim: (1) deficient performance by counsel and (2) how "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (stating that "[u]nless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.").

First, regarding deficient performance, reviewing courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance." *Id.* at 689. To show that representation fell below an objective standard of reasonableness, Starghill must articulate specific acts or omissions that demonstrate how counsel's performance fell "outside the wide range of professionally competent assistance." *Id.* at 690. In other words, Starghill bears the burden of showing that his counsel "made errors so serious that the counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. While reviewing his ineffective assistance of counsel claims, the Court must make "every effort" to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

Second, Starghill must also establish prejudice by showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of his proceedings would have

been different. *Id.* at 694–95. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (citing *Strickland*, 466 U.S. at 693)). "When deciding ineffective-assistance claims, courts need not address both components of the [deficient performance and prejudice] inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Strickland*, 466 U.S. at 697. Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 691). "Counsel is constitutionally ineffective only if performance below the professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (citing *Strickland*, 466 U.S. at 668).

**B**

Starghill presents 15 separate subclaims/theories relating to his ineffective assistance of counsel claims. [R. 150 at pgs. 5–12].[1] The undersigned will consider each in turn.

**i**

Starghill  asserts that his trial counsel failed to obtain exculpatory evidence for his client by: (1) refusing to investigate TFO Bryson's "false arrest history" of him; (2) failing to investigate Bryson's past "racial animus attacks" against Starghill and his associates; (3) failing to obtain body-cam footage that "showed the weapons to be on top of the Book Shelf, not in petitioner's direct possession"; (4) failing to obtain a copy of the 911 call that brought the police

---

[1] In his reply, Starghill also seems to argue that Mr. Friend was ineffective for moving for a mistrial during the first jury trial, stating that "Mr. Friend insisted on calling a mistrial knowing calling a mistrial won't stop Mr. Starghill from being prosecuted over, and over again. Mr. Starghill didn't care who the juror talk to at this point he didn't want a mistrial…" [R. 169 at pg. 7]. This claim was not raised in his original § 2255 petition, so the undersigned has not included an analysis of this claim in this Report & Recommendation. However, even a cursory review indicates that this argument, like Starghill's other claims, also fails.

to Mullins' residence; and (5) failing to call witnesses who would have supported his claims of racial animus. [*Id.* at pg. 5].

First, Starghill provides little proof of this "false arrest history" and this alleged racial animus. Starghill's petition contains no substantive description of these previous charges, nor does he identify any witnesses who would substantiate these claims. [*See id.*]. In his reply, Starghill does describe two incidents with TFO Bryson in 2013, during which he claims that TFO Bryson targeted him due to his race and attempted to have his associates "put the blame on Starghill for something that wasn't his." [R. 169 at pgs. 8–9]. Starghill identifies only one potential witness to one of these incidents, his girlfriend at the time Ashley Casebolt, but he does not state that Ashley would have been willing to testify on his behalf at trial. [*Id.*]. As Mr. Friend attests to in his affidavit, however, "Task Force Officer Bryson was not called to testify at trial in this case on behalf of the Government. There was no good faith basis or strategic reason to call Bryson to testify regarding his prior interactions with the Defendant." [R. 161-1 at pg. 2]. The only involvement TFO Bryson appears to have in the case, based on the evidence that has been provided, is his testimony at the preliminary hearing where he established that "he was not present at Mr. Mullins' residence, and that Mr. Starghill was not under surveillance on the night of the incident." [*Id.* at pg. 1].

The Sixth Circuit has been quite clear: "[w]hen a motion is made to vacate or set aside a judgment under Section 2255, the movant must set forth facts which entitle him to relief. Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961) (internal citations omitted). Further, the Sixth Circuit has held that no hearing is required when the petitioner's statements are "contradicted by the record, inherently incredible, or conclusions rather than statements of facts..." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013)

(quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

Here, however, Starghill has provided no affidavits or evidence beyond his own conclusory statements that counsel provided ineffective assistance by not investigating these allegations of racial animus or this "false arrest history." Again, TFO Bryson did not testify at trial and, based on his testimony at the preliminary hearing, was not substantively involved in the events that led to Starghill's arrest in this case. Nothing has been presented to contradict this testimony and Starghill's own statements and interpretation of events seem to be at odds with the record. Further, there is no basis to find that testimony on this arrest record or this racial animus would have been relevant or admissible for the trial.

Starghill also contends that counsel was ineffective in refusing to procure a copy of the body-camera footage and the recording of the 911 call related to the central events of this case. [R. 150 at pg. 5]. However, Starghill presents no evidence that Trooper Hamilton, the arresting officer, had a body camera on during the night in question.

As for the 911 call, Mr. Mullins testified about the call at trial. [R. 138 at pgs. 48–50]. Again, Starghill does not explain how any statements about this call that were not presented to the jury would have affected the case or "impeached the witness's false allegations that the petitioner was actually holding a weapon in his hand, then had the other weapon beneath him on the bed…" [R. 150 at pg. 5]. Nor does Starghill explain how a 911 call that was made "45 minutes to an hour" before the Kentucky State Police arrived on the scene would have been able to touch upon the placement of the weapons found or otherwise contradict Trooper Hamilton's testimony. [*See* R. 138 at pg. 49]. Starghill fails to explain how the introduction of the 911 call would have presented any information that Mr. Mullins' testimony did not already provide for the jury. Therefore, these assertions cannot support a finding of ineffective assistance of counsel.

ii

Starghill next alleges that he was unlawfully arrested because Mr. Mullins "did not give
those officers permission to search his home for anyone else," and again cites to TFO Bryson's
alleged racial animus as the motive for the arrest. [R. 150 at pg. 5]. The Supreme Court has
previously held that Fourth Amendment protections only apply in areas where the defendant has
a "reasonable expectation of privacy." *See Rawlings v. Kentucky*, 448 U.S. 98, 104–106 (1980).
For guests and other parties who may be arrested or searched on another person's property, the
courts must examine who these guests are and whether it was reasonable for them to have an
expectation of privacy on the premises. *See Minnesota v. Carter*, 525 U.S. 83, 90 (1998) ("But
the extent to which the Fourth Amendment protects people may depend upon where those people
are."). "This legitimate expectation of privacy exists only if 'the defendant exhibited an actual
subjective expectation of privacy' and 'the defendant's subjective expectation of privacy is 'one
that society is prepared to recognize as reasonable.'" *United States v. Jenkins*, 743 F. App'x 636,
647 (6th Cir. 2018) (quoting *United States v. Gillis*, 358 F.3d 386, 391 (6th Cir. 2004)); *see also
United States v. Carson*, 796 F. App'x 238, 249 (6th Cir. 2019) (defendant did not have standing
to challenge the search of his mother's house where he has not shown he also lived there).

In this case, Starghill has argued that he had a reasonable expectation of privacy at Mr.
Mullins' house because he was an overnight guest and that his "status as an overnight guest is
alone enough to show he had an expectation of privacy in the home society recognized as
reasonable." [R. 169 at pg. 1]. However, one's status as an overnight guest is not enough on its
own to create a reasonable expectation of privacy. Further, Mr. Mullins also testified that he
consented to having the Kentucky State Troopers enter his home, further negating any potential
Fourth Amendment violation. [R. 138 at pg. 49]. Therefore, Starghill has not presented sufficient
evidence that a claim asserting a Fourth Amendment violation would have been successful or

otherwise meritorious given the facts of this case.

### iii

Starghill's Sub-Claim C posits that counsel should have investigated the legality of having state law enforcement officers serve as Task Force Officers because "Congress outlaws it by passing federal statutes prohibiting State Corps and Federal agents to bounce cases between them, as a result of the Separation of Powers Doctrine mandatory requirements for Task Force Officer Status." [R. 150 at pg. 6]. While the undersigned acknowledges that this is a novel argument, Starghill cites to no caselaw or any evidence to support this proposition. "Counsel is not required by the Constitution to raise frivolous defenses or arguments to avoid a charge of ineffective representation." *Chapman v. United States*, 7 F. App'x 590, 593 (6th Cir. 2003) (citing *Krist v. Foltz*, 804 F.2d 944, 946–47 (6th Cir. 1986)). Put another way, "counsel cannot be ineffective for failure to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001). Therefore, Starghill has failed to present any evidence or support that this argument would have been successful at trial.

### iv

Starghill next argues that counsel should have sought a dismissal of the indictment because no evidence was presented to support the contention that he had the requisite intent to commit unlawful possession of a firearm. [R. 150 at pg. 6]. An indictment that is valid on its face cannot be dismissed on the grounds that the indictment is based on inadequate or insufficient evidence. *United States v. Williams*, 504 U.S. 36, 54 (1992). "On a motion to dismiss, the Court must view the Indictment's factual allegations as true, and must determine only whether the Indictment is 'valid on its face.'" *United States v. Campbell*, No. 02-80863, 2006 WL 897436, at *2 (E.D. Mich. Apr. 6, 2006) (quoting *Costello v. United States*, 350 U.S. 359, 363 (1956)).

Here, Starghill has identified no defect in the indictment and thus has not supported his

contention that counsel would have been successful in moving to dismiss the indictment. He also claims that "[n]o other information existed to support the charges, even if Mr. Starghill merely touched the weapons, in light of the fact that the arresting official made no effort to determine the origins of those weapons or who may own them…" [R. 150 at pg. 6]. However, this argument fails to take into consideration the instructions that were tendered to the jury, which define possession as either having "direct, physical control over a firearm" and knowing "that he had control over it[,]" or that he "had the right to exercise physical control over a firearm, and knew that he had this right, and that he intended to exercise physical control over the firearm at some time, either directly or through other persons." [R. 105 at pg. 15]. The instructions go on to clarify, however, that "just being present where something is located does not equal possession." [*Id.*]. The jury was therefore fully informed of the possible definitions of possession, including the fact it did not necessarily require actual ownership of the firearm, and that Starghill's mere presence near the firearms in question did not necessarily equate to his ownership or possession of these weapons. Finally, the Sixth Circuit Court of Appeals already touched on this issue with the following analysis:

> Starghill contends that there is insufficient evidence to support the possession element of either of the offenses because "the firearms [were] merely ... located in the same room as [him]." But Trooper Hamilton testified that he found Starghill in Mullins's residence with a handgun cradled in his arm and a sawed-off shotgun laying underneath Starghill's left shoulder. Based on this evidence, the jury could easily have concluded that Starghill possessed the firearms as alleged. His sufficiency-of-the-evidence argument therefore fails.

*United States v. Starghill*, No. 20-5706, 2021 WL 3140316, at *2 (6th Cir. July 26, 2021).

v

Next, Starghill claims that counsel's failure to obtain the Grand Jury transcripts related to this case was "inexcusable" because counsel "could have captured government witness ("TFO") Bryson lying to that body to secure an indictment on perjured testimony." [R. 150 at pg. 7]. As

previously mentioned, Starghill has failed to provide any proof, beyond conclusory statements
and allusions to unidentified witnesses, that TFO Bryson was motivated by racial animus to
target him or that he presented any false statements to the Grand Jury. Starghill claims that TFO
Bryson lied to the Grand Jury, specifically that Bryson lied about statements Mr. Mullins made
after Starghill's arrest and his past encounters with Starghill "in which he fabricated State
Charges against Mr. Starghill." [*Id.*].  However, Starghill provides no proof that such statements
were made to the Grand Jury and of this racial animus beyond his own conclusory statements.
This, combined with the fact TFO Bryson did not testify at trial and seems to have had minimal
involvement in this case, indicates that this argument must fail.

### vi

Starghill posits that counsel was ineffective for failing to pursue two destruction of
evidence theories: (1) the destruction of video-taped evidence relating to his arrest and (2) the
improper handling of the central firearms for this case. [R. 150 at pg. 7].

The undersigned has already addressed this first theory and will only reiterate that no
evidence has been presented to support the contention that Trooper Hamilton had a body-camera
on during the central events of this case.

As to the second theory, Starghill appears to argue that the prosecution mishandled the
firearms by "deliberately contaminat[ing]" the weapons by never putting the items in evidence
bags and by not using gloves when handling the weapons [*Id.*]. His issues with the handling of
the firearms appears to be related to the way the prosecution and the witnesses handled and
touched the firearms during the trial itself. [*Id.*] ("Mr. Friend witnessed in three separate trials the
Government and its ('TFO') in addition to unknown others who passed these firearms around
without being in evidence bags."). Starghill, however, fails to explain how this "mishandling" of
these firearms would have contaminated this evidence, as the main piece of evidence linking

Starghill to the firearms at trial was Trooper Hamilton's testimony that he found Starghill near

the weapons. [*See* R. 138 at pgs. 66–67].[2]

Again, Starghill fails to provide any support that this evidence was mishandled before or

even during the trial or how a motion to dismiss on these grounds would have been successful.

**vii**

Next, Starghill again refers to TFO Bryson's alleged false testimony to the Grand Jury

and the Court and argues that counsel was deficient for not dismissing the indictment on these

grounds or for procuring the Grand Jury or preliminary hearing transcripts. [R. 150 at pg. 8].

Starghill references TFO Bryson's allegedly false statements he made that he was Trooper

Hamilton's immediate supervisor and that he was familiar with Hamilton's case and that TFO

Bryson "fabricated Mr. Mullin's [*sic*] statements about the defendant's gun possession activities.

. ." [*Id.*]. Starghill also references a "forged interview" TFO Bryson conducted with Mr. Mullins

to have Starghill indicted. [R. 169 at pg. 10]. However, Starghill again fails to specify which of

TFO Bryson's statements were perjurious either before the Grand Jury or during the preliminary

hearing. In fact, during the preliminary hearing TFO Bryson did not testify about any statements

Mr. Mullins made about Starghill's possession of any handguns and, on this issue, only testified

that Starghill was found with firearms and described the firearms in question. [*See* R. 58].

Likewise, Starghill presents no evidence of this "forged interview." Mr. Mullins did testify about

his interview with the police and his statements regarding the day in question and his ownership

and knowledge of the guns in question. [R. 138 at pgs. 55–56]. However, nothing in the record

---

[2] In his reply, Starghill also appears to argue that his counsel should have had the firearms in question
forensically tested to determine if his fingerprints were on them or not. [R. 169 at pgs. 7–8]. This
argument was not raised in his § 2255 petition so it need not be examined here. However, even if the
undersigned considered this argument, the analysis would remain unchanged, especially considering the
fact Starghill's § 2255 petition seems to contradict this argument that he did not touch the firearms. [*See*
R. 150 at pg. 6].

indicates that this interview was "forged" or that TFO Bryson or anyone else presented any false evidence to the Grand Jury or the Court o that these transcripts would have supported this conclusion. Again, Starghill has failed to provide anything beyond his own conclusory statements to support this point. Therefore, this claim must likewise fail.

**viii**

Starghill argues that counsel was deficient for entering into a trial stipulation that "essentially waived [his] right to impeach the government witnesses' testimony about the circumstances of the defendant's arrest by marginalizing the intent component of both provisions of Law he is accused of violating." [R. 150 at pg. 8]. Starghill goes on to assert that counsel "agreed to allow without objection uncontroverted testimony of each of the Law Enforcement witnesses…" and that counsel "agreed there were no breaks in the chain of custody of the weapons." [*Id.*]. For this second point, he primarily points to the handling of the relevant firearms during the trial. [*Id.*].

To begin with, Starghill's characterizations of the stipulations do not match the record. The stipulations that were presented to the jury primarily outline that: (1) Starghill had been previously convicted of a crime and was prohibited from possessing a firearm and that he knew this fact; (2) that the central firearms are firearms as defined by federal statute; (3) that the shotgun in this case had a barrel of less than 18 inches and was not registered to Starghill; and (4) that there was no break in the chain of custody for the prosecution's exhibits. [R. 138 at pgs. 41–42]. Nothing in these stipulations touches on the "intent" aspect of Starghill's charges nor did it prohibit his counsel from attempting to impeach the prosecution's witnesses. In fact, Mr. Friend did cross-examine both of the prosecution's witnesses and did so to emphasize that only Trooper Hamilton found Starghill with these weapons and that Mr. Mullins did not claim that Starghill owned these guns. [*See id.* at pgs. 13–23, 32–39]. The record thus flatly contradicts

Starghill's characterization of these stipulations.

Second, as previously stated, Starghill fails to demonstrate where any break in the chain of custody for the firearms occurred. The only fact he points to in support of his contention that there was a break in the chain of custody is the alleged mishandling of the central firearms already discussed. [R. 150 at pg. 8]. For the reasons stated above, the handling of these firearms during the trial cannot be considered a break in the chain of custody. Starghill also alleges that the firearms "were never processed according to Kentucky State Trooper evidence gathering by-laws, let alone ("FBI") Policies and Procedures." [*Id.*]. However, he does not reference any specific by-laws or policies and procedures that were violated in this case or provide any proof of these violations beyond conclusory statements about the handling of the firearms during the trial. Therefore, this claim must also fail.

ix

Starghill argues that counsel was deficient because he failed to seek jury instructions regarding "mere presence" or "police fabrication." [*Id.* at pg. 9]. The undersigned presumes that Starghill has argued that counsel should have included instructions to the jury informing them that his mere presence around the firearms does not necessarily mean he possessed said weapons and, based on his other claims, that counsel should have moved for an instruction to inform the jury of the "racial animus" and alleged false testimony that law enforcement officials had used to secure his indictment. As for the first instruction on "mere presence," as the United States points out that such an instruction was presented to the jury. [R. 161 at pg. 8]. Pursuant to Instruction No. 15, the jury was instructed that "just being present where something is located does not equal possession." [R. 105 at pg. 15]. Starghill, however, fails to provide an alternative instruction that could have better encapsulated his "mere presence" instruction to the jury.

Likewise, as previously stated for several of his claims, no evidence has been presented

to support his contention that law enforcement officials fabricated any evidence for this case. In fact, as Starghill himself admits, other possible owners of these firearms were identified for the jury at trial, yet the jury still returned a guilty verdict. [R. 150 at pg. 9; *see also* R. 138 at pg. 71]. Likewise, Starghill does not provide a description of the "fabrication" instruction that counsel should have provided. The undersigned cannot find that counsel was deficient for not advocating for a duplicative instruction and an instruction not supported by the evidence, both of which would have likely been denied. Therefore, this claim must also fail.

**x**

Starghill claims that counsel was deficient for not calling three unidentified witnesses who would have supported his claims that TFO Bryson harbored "racial animus" towards him and that he "was a victim of a vicious corrupted law enforcement official." [R. 150 at pg. 9]. For the reasons stated above, no evidence has been submitted to show that any attempt to assert this argument at trial would have been successful.

**xi**

Starghill claims that he was "unduly influenced" by counsel to not testify on his own behalf. [*Id.* at pg. 10]. He claims that counsel advised him not to testify because "his criminal record would be exposed, and give the government an opportunity to trip him up." [*Id.*]. He also claims that counsel advised him not to testify because the trial court would not allow him to testify about TFO Bryson and Trooper Hamilton's alleged racial bias and that he may have faced a possible obstruction enhancement if he testified. [*Id.*].

"Although the right to testify is a fundamental right subject only to knowing and intelligent waiver, 'waiver of certain fundamental rights can be presumed from a defendant's conduct alone, absent circumstances giving rise to a contrary inference.'" *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009) (quoting *United States v. Stover*, 474 F.3d 904, 908 (6th Cir.

2007)). Indeed, "[t]he right to testify is personal to the defendant, may be relinquished only by the defendant…" *United States v. Webber*, 208 F.3d 545, 550–51 (6th Cir. 2000) (citing *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993)). "A defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel. *Joelson*, 7 F.3d at 177. At base, a defendant must 'alert the trial court' that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand. *Pelzer*, 1997 WL 12125 at *2." *Id.* at 551. "Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so. *Joelson*, 7 F.3d at 177." *Id.*

Here, as the United States points out in their response, "[n]one of the alleged advice falls outside the broad boundaries of reasonable strategy." [R. 161 at pg. 9]. At the very least, nothing in the advice indicates that defense counsel improperly influenced Starghill to not testify at trial. As previously stated, while counsel can advise a client on whether to testify or not, the right to testify and the ultimate decision lies with the defendant. Finally, Starghill never voiced any concerns with the Court nor does he allege he did so in his petition. The undersigned cannot find any fault in the advice Starghill allegedly received nor in the decision to advise him to not testify at trial. Thus, this claim must fail.

## xii

Starghill claims that defense counsel was deficient for failing to cross-examine the prosecution's witnesses "acts or omissions relating to the search, seizure and arresting details…" and refusing to question these witnesses on "their real motive in arresting Mr. Starghill, or ask about body-cams…" [R. 150 at pg. 10]. As previously stated, Starghill has presented no evidence of any racial animus from law enforcement officials in this case nor that any body-camera footage of his arrest exists. As for his contention that cross-examination would have proved that

the search of Mr. Mullins' house and Starghill's arrest were unconstitutional, the undersigned again points out that Mr. Mullins explicitly testified that he called the Kentucky State Police and invited them into his home. [R. 138 at pgs. 48–50]. Further, counsel did use his opportunity at trial to cross-examine these witnesses and try to call into question the ownership of the weapons. [*Id.* at pgs. 13–23, 32–39]. The mere fact this cross-examination failed to convince the jury is not enough to find counsel's questioning of the witnesses as deficient. Therefore, this claim must also fail.

**xiii**

Starghill argues that counsel was deficient for failing to argue for concurrent sentences for his convictions. [R. 150 at pg. 11]. However, per the verdict and sentencing rendered in this case, Starghill was sentenced to "Two Hundred and Forty (240) months on Count 1SS and One Hundred and Twenty (120) months on Count 2SS, to be served *concurrently*, for a total sentence of TWO HUNDRED AND FORTY (240) MONTHS." [R. 127 at pg. 2] (emphasis added). Therefore, Starghill's claim that his sentences are not concurrent is incorrect and this claim must also fail.

**xiv**

Starghill argues that defense counsel was deficient for failing to argue that the imposition of a supervised release was unconstitutional. [R. 150 at pg. 11]. Specifically, he claims that the adding the supervised release made his sentence fall "outside the Statutory Maximums permitted under the Statute of Convictions." [*Id.*].

Pursuant to 18 U.S.C. § 3583(a), "[t]he court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment…" The trial court in this case did just that by ordering that, upon release, Starghill would be on supervised

release for a total term of five years. [R. 127 at pg. 3]. Other circuits have consistently held that "the combined sentence of years of imprisonment plus years of supervised release may exceed the statutory maximum number of years of imprisonment authorized by the substantive statute applicable to the crime of conviction." *United States v. Work*, 409 F.3d 484, 489–90 (1st Cir. 2005) (citing *United States v. Wirth*, 250 F.3d 165, 170 n. 3 (2d Cir.2001); *United States v. Pierce*, 75 F.3d 173, 178 (4th Cir.1996); *United States v. Robinson*, 62 F.3d 1282, 1285–86 (10th Cir.1995); *United States v. Watkins*, 14 F.3d 414, 415 (8th Cir.1994); *United States v. Jamison*, 934 F.2d 371, 375 (D.C.Cir.1991); *United States v. Montenegro–Rojo*, 908 F.2d 425, 431–32 (9th Cir.1990); *United States v. West*, 898 F.2d 1493, 1504 (11th Cir. 1990); *United States v. Butler*, 895 F.2d 1016, 1018 (5th Cir.1989)). As the First Circuit has explained, "[t]he supervised release period is an independent element of the sentence. It is not carved out of the maximum permissible time allotted for incarceration under some other criminal statute." *Id.* at 489 (citing *West*, 898 F.2d at 1504).

As the United States explain in their response, given this abundance of caselaw, any attempt to challenge the imposition of this supervised release would have been frivolous. [R. 161 at pg. 10]. Therefore, this claim must also fail.

**xv**

Finally, Starghill alleges cumulative error to argue his counsel was ineffective. [R. 150 at pg. 12]. However, "because [Starghill's] allegations of ineffective assistance are groundless, there is no need to conduct a cumulative error analysis." *United States v. Brumley*, No. 6:14-CR-00032-GFVT, 2017 WL 10637727, at *16 (E.D. Ky. Aug. 9, 2017), *report and recommendation adopted*, 2018 WL 6003863 (E.D. Ky. Nov. 15, 2018); *Arevalo v. White*, No. 5:14-CV-00415-HRW, 2016 WL 2929096, at *18 (E.D. Ky. Feb. 23, 2016) (noting that "where there are no errors and no prejudice from any alleged errors, there can be no cumulative error"), *report and recommendation*

*adopted*, 2016 WL 2853517 (E.D. Ky. May 13, 2016), *certificate of appealability denied*, 2017 WL 6760653 (Jul. 18, 2017), *cert. denied*, 138 S. Ct. 2594 (May 29, 2018). So, Starghill's cumulative error claim also fails.

### Non-Ineffective Assistance of Counsel Claims

In addition to the multiple ineffective assistance of counsel claims that were discussed above, Starghill also makes three additional claims: (1) that the government committed prosecutorial misconduct by presenting false testimony to the Grand Jury and the trial court; (2) that the trial court committed judicial misconduct by "favoring the Government's Case" and punishing Starghill for pursuing this case; and (3) that the evidence presented was insufficient to support his conviction. [R. 150 at pgs. 13–16]. While some of these issues were already analyzed above, the undersigned does not believe a substantive analysis of these claims is necessary because, as the United States points out in its response [R. 161 at pgs. 10–11], these claims are procedurally barred.

As the Sixth Circuit has held in the past, "Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *United States v. Frady*, 456 U.S. 152, 167–68 (1982)). "Accordingly, claims that could have been raised on direct appeal, but were not, will not be entertained via a motion under § 2255 unless the petitioner shows: (1) cause and actual prejudice to excuse his failure to raise the claims previously; or (2) that he is 'actually innocent' of the crime." *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). Finally, "[a] § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances." *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) (citing *United States v. Brown*, 62 F.3d 1418 (6th Cir. 1995) (unpublished) (citations omitted), cert. denied, 516 U.S. 942, 116 S.Ct. 377, 133

L.Ed.2d 301 (1995)).

Here, Starghill's last three claims could have been raised on direct appeal. In fact, he already presented arguments regarding prosecutorial misconduct and evidence sufficiency before the Sixth Circuit Court of Appeals and the Court rejected both arguments. *United States v. Starghill*, No. 20-5706, 2021 WL 3140316, at *2 (6th Cir. July 26, 2021). Further, Starghill has presented no evidence to show "cause or actual prejudice" as to why he could not have asserted his judicial misconduct claims during his last appeal. For these reasons, these additional claims must also fail.

## IV. CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a movant made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find that the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (stating that issuance of a Certificate of Appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought pursuant to 28 U.S.C. § 2255); *see also Miller-El v. Cockrell*, 537 U.S. 322, 335–337 (2003). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005).

Here, Starghill has not made a "substantial showing" as to any claimed denial of his constitutional rights. Moreover, the Court also believes that reasonable jurists would not find its determination on the merits debatable. Therefore, the undersigned recommends that the District Court deny a Certificate of Appealability.

## V. CONCLUSION

Upon review of the record, and for the reasons stated herein, and in accordance with Rule

10 of the Rules Governing Section 2255 Habeas Cases, **IT IS RECOMMENDED** that:

1. Starghill's § 2255 petition [R. 150] be **DISMISSED WITH PREJUDICE**; and

2. A Certificate of Appealability be **DENIED** as to all issues raised, should Starghill so request.

\*\*\* \*\*\* \*\*\* \*\*\*

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed within fourteen days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(1).

Signed September 8, 2023.



**Signed By:**

*Edward B. Atkins*

**United States Magistrate Judge**